(No. 11861.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FRANK CURRAN *et al.* Plaintiffs in Error.

*Opinion filed December 18, 1918—Rehearing denied Feb. 5, 1919.*

1. CRIMINAL LAW—*when People may proceed under the statute or the common law.* If an act is an offense both against the common law and the statute the People may proceed under either the statute or the common law, or both.

2. SAME—*what not necessary to constitute conspiracy at common law.* To constitute the offense of conspiracy at common law it was not necessary that the object of the conspiracy should constitute a criminal act but it was sufficient if the object was unlawful though not indictable.

3. SAME—*when alleged error will not be considered.* Alleged error in not requiring a bill of particulars will not be considered

where the bill of exceptions does not show any motion by the defendants that a bill of particulars be furnished.

4. SAME—*jurors are required to be accepted in panels of four.* Under the Illinois statute jurors are required to be accepted in panels of four, and until both sides accept a panel of four either side may challenge peremptorily a juror tendered to the other side.

5. SAME—*neither party has a right to peremptorily challenge a juror after he has been sworn.* It is not the right of either party to peremptorily challenge a juror after he has been sworn, and if a juror is discharged it is lawful for the court to call another in his stead.

6. SAME—*when refusal to allow peremptory challenge is proper.* After a panel of four jurors has been accepted and sworn, the fact that one of the four is later excused by the court for physical incapacity does not revive the right of either party to peremptorily challenge one of the remaining three, and it is proper for the court to refuse to allow such challenge.

7. SAME—*defendants may be required to stand up for the purpose of identification.* Defendants on trial for conspiracy to extort money may be required to stand up in court to enable a witness to state whether they were the persons referred to by the witness, and requiring them to do so is not compelling them to give evidence against themselves.

8. SAME—*when court may permit the State's attorney to cross-examine witnesses called by him.* Where witnesses called by the State's attorney give evasive answers and have made statements to him or to the grand jury different from their testimony on the trial it is proper for the court to allow the State's attorney to cross-examine them.

9. SAME—*witnesses whose names are not on back of indictment may be called.* The law requires the names of the witnesses who appeared before the grand jury to be noted on the back of the indictment; but it is within the discretion of the court to allow other witnesses to be called on the trial, and the exercise of such discretion is not a subject for assignment of error.

10. SAME—*when the People need not be required to elect under what counts they will proceed.* Where the conspiracies charged in the various counts of an indictment are different parts of one conspiracy the defendants have no right to demand that the People elect upon what count or counts they will proceed.

11. SAME—*what proof justifies conviction for conspiracy.* Defendants on trial for conspiracy to extort money are properly convicted upon proof of some fifty instances where buildings, which the defendants had put upon a blacklist on some pretext, would

have their windows broken out by missiles being thrown through them, and that when the owners attempted to buy new glass they were refused by the dealers until the owners had gone, by direction of the dealers, to the defendants' headquarters in a certain saloon and paid them money to take the buildings off the list; and it is not essential that there be direct testimony connecting defendants with the breaking of the windows.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Criminal Court of Cook county; the Hon. KICKHAM SCANLAN, Judge, presiding.

WILLARD M. McEWEN, BENEDICT J. SHORT, WILLIAM J. MAHER, and JOSEPH R. BURRES, for plaintiffs in error.

EDWARD J. BRUNDAGE, Attorney General, MACLAY HOYNE, State's Attorney, and JAMES H. WILKERSON, (EDWIN J. RABER, EDWARD E. WILSON, MARVIN E. BARNHART, and NICHOLAS MICHELS, of counsel,) for the People.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Fifty-four persons were indicted in the criminal court of Cook county for the crime of conspiracy and twenty-five of them were put on trial at the April term, 1916. The prosecution dismissed the indictment as to several, three were found not guilty and fourteen were convicted and sentenced to pay fines or to be confined in the penitentiary. Two of the defendants who were fined paid their fines and the remaining twelve sued out writs of error from the Appellate Court for the First District, where the judgment was affirmed, and they sued out a further writ of error from this court.

There were sixteen counts in the indictment, the seventh and sixteenth of which were dismissed by the State's attorney, and the court overruled a motion to quash the remain-

ing counts. All of the counts except the third, which con-
cluded contrary to the statute, charged a conspiracy as at
common law. The principal objection is that as the counts
contain the essentials of an offense under the Criminal Code
they should have concluded against the form of the statute.
The third count, which was under the statute, was substan-
tially in the words of the first count in the case of *Thomas*
v. *People,* 113 Ill. 531, where it was held good, and the re-
maining counts charged a conspiracy to commit unlawful
acts and were in every respect sufficient. If an act is an
offense both against the common law and the statute, the
prosecutor may proceed under either the statute or the com-
mon law or both. (*Chicago, Wilmington and Vermilion
Coal Co.* v. *People,* 214 Ill. 421.) It was not necessary,
to constitute the offense of conspiracy at common law, that
the object of the conspiracy should constitute a criminal act,
but it was sufficient if the object was unlawful though not
indictable. (*Smith* v. *People,* 25 Ill. 17.) The court did
not err in denying a motion to quash the indictment or any
count thereof.

The bill of exceptions does not show any motion of the
defendants for a bill of particulars, and the error alleged
in not requiring the same cannot be considered. *Star Brew-
ery* v. *Farnsworth,* 172 Ill. 247.

On April 27 four jurors, including Brown and Shaw,
were accepted by both sides and sworn to try the issue and
thereby became a part of the jury. (*Sterling Bridge Co.*
v. *Pearl,* 80 Ill. 251.) Nine days afterward, during the ex-
amination of the second four, the court excused Brown for
physical incapacity, and each defendant then interposed a
peremptory challenge to the juror Shaw. The peremptory
challenge was overruled and another juror was called in
place of Brown, examined, accepted and sworn. It is con-
tended that the court erred in denying the peremptory chal-
lenge of Shaw, and the basis of the claim is the provision
of the statute that the jury shall be passed upon and accepted

286 – 20

in panels of four by the parties. At the common law each juror was sworn as he was chosen, (4 Blackstone's Com. 352; 1 Chitty on Crim. Law, 547;) and there was no right to a peremptory challenge after the juror was sworn. Under our statute there must be twelve jurors in the box and each panel of four must be accepted by both parties before calling up another, and until both sides accept a panel of four the statute permits either side to challenge peremptorily a juror tendered to the other side. (*People* v. *Gray,* 251 Ill. 431.) Neither that case nor the case of *Sterling Bridge Co.* v. *Pearl, supra,* involved in any manner the question whether a peremptory challenge may be allowed after a juror has been sworn. At common law, when a juror was taken ill during a trial the whole jury was discharged, and when the same eleven, with another, were presented the second time as a new jury the prisoner had a right to challenge any of them as if they had never been previously in the panel. (1 Chitty on Crim. Law, 545.)

In *Stone* v. *People,* 2 Scam. 326, Stone was indicted for murder, and after the trial began it was discovered that one of the jurors was an alien and he was discharged. It was assigned for error that when the juror was withdrawn from the jury the whole jury should have been discharged. That was not done but the place of the juror was filled and the trial was begun anew. The court stated the rule of common law where a juror was withdrawn by reason of sickness or any other cause, or where the death of any one ensued during the trial, the remaining jurors were to be discharged, and the prisoner, unless he consented to have the eleven remain, must be tried by another jury, which, of course, was a good reason for allowing a peremptory challenge when the same persons were again presented on the new jury. The withdrawal of the juror was held proper, and the court said, the remaining eleven jurors being all competent and having been all chosen and accepted as well by the prisoner as the prosecutor, it would have been irregular to have dis-

charged them. The court also referred to a statute in force at that time, but the provision of the statute is conceded now to be the law, and, regardless of any statute, if a juror is discharged it is lawful for the court to cause another to be called in his stead.

In *Baxter* v. *People*, 3 Gilm. 368, the court said that in case a juror becomes unable to go on with the trial, the court, on ascertaining the fact, will either suspend the trial or discharge him and impanel another in his place and commence the trial again.

In *City of Shawneetown* v. *Mason*, 82 Ill. 337, a juror was taken sick and discharged and a new juror was summoned in his place and the trial was begun *de novo*. The counsel for the defendant moved that the remaining eleven jurors be also discharged, but the court overruled the motion and was sustained by this court.

In *Mayers* v. *Smith*, 121 Ill. 442, it was held that under our statute, after a panel of four jurors has been passed upon and accepted by both parties and another panel is called, the party having peremptory challenges will not have the right to go back and challenge peremptorily any one of the jurors accepted although they have not been sworn, and the court said that whatever may have been the rule at common law, under our statute the right to a peremptory challenge is cut off with respect to any one of a panel of four jurors which has been passed upon and accepted by both parties. That case was referred to in *People* v. *Gray, supra,* as not applicable to the decision, because in Gray's case a panel of four had not been accepted by both sides, while in this case the panel of four had been accepted by both sides and sworn to try the issue. The rule of all courts, without exception, has been that it is not a right of either party to peremptorily challenge a juror after he has been sworn. *State* v. *Lyons,* 70 N. J. L. 635; *Santry* v. *State,* 67 Wis. 65; *Cooley* v. *State,* 38 Texas, 636; *State* v. *Armington,* 25 Minn. 29; *Sackett* v. *Ruder,* 152 Mass. 397; *People* v.

*Reynolds,* 16 Cal. 128; *Bradham* v. *State,* 41 Fla. 541; *Kurtz* v. *State,* 145 Ind. 119; *Meyer* v. *State,* 43 Fla. 503; *People* v. *Carpenter,* 102 N. Y. 238; 1 Bishop on Crim. Proc. sec. 945; 24 Cyc. 363.

Counsel have failed to find any case in which it has been decided that after a juror is accepted and sworn and has become one of the jury to try the issue he can be challenged peremptorily as a matter of right. Certainly there is no material distinction in that respect between statute and practice, by which jurors are accepted one at a time or four at a time or the whole twelve. After four jurors are accepted and sworn they become jurors in the case and no longer constitute a panel, and if a juror should be excused after all are sworn or .at any time during the course of the trial, which is as likely to happen as what occurred in this case, the court could not go back and divide the jurors into panels and treat a juror as one of a panel broken by his discharge and to be again presented for acceptance. The statute was complied with in this case when a panel of four was passed upon, accepted and sworn, and the time had passed when the defendants, having had an opportunity to peremptorily challenge the juror Shaw, had accepted him to try the issue. The court did not err in denying the peremptory challenge.

The plaintiffs in error were proved guilty beyond the semblance of a doubt and no other verdict could have been reached by a jury giving any consideration to the evidence. The plaintiffs in error were members and business agents of labor unions,—the Painters' District Council, the Glaziers' Union, the Wood Finishers' Union and the Fixtures Hangers' Union. Every Monday the board of business agents caused to be prepared a list called "glass list," which contained the location of property charged to be unfair to the unions concerned in the list. Supplemental lists were made on Wednesday and Friday, on which some pieces of property were taken off and others were added at the direction of the various business agents. Copies of these lists were

mailed to all dealers in glass in Chicago, who would refuse
to furnish glass for any building on the list. After the list
was made the glass in the building on the list would be
broken by beer bottles, bricks or missiles, and the owner
would go to the dealers in glass to have the broken glass
replaced. The dealers would refuse to furnish glass and
direct the owner to Johnson's saloon, at 333 West Madison
street, which was the headquarters for the plaintiffs in er-
ror. The balcony in the saloon was furnished with tele-
phone booths and desks for the use of the plaintiffs in error,
and the owner would there meet the business agents who
had put his property on the list and would be informed that
he had violated some rule of the trade union and would
have to pay the business agent money before his glass would
be re-set. The owner was compelled to pay the business
agent money, and the glass was immediately furnished by
the glass dealer and set without further condition. Fre-
quently the alleged violation of the rights of the trade union
consisted of some work of little importance and money was
extorted from the owner for being permitted to have his
glass re-set. There was no real or substantial controversy
between the owner and any union, and the scheme was to
extort money from owners of property to have their prop-
erty taken off the blacklist. There were more than fifty such
cases and the operations of the plaintiffs in error covered
several years.

A fair example of the practices of the plaintiffs in er-
ror is the case of Isadore Hoffman, whose premises were
at 3101 Lincoln avenue. He had some electrical work done
by Philip Goldstein, who showed a union card of local 376
and Hoffman supposed that he was employing union labor.
Electrical Union No. 376 had seceded from one union and
had formed another, which the defendants, representing
union 134, claimed was irregular. The plaintiffs in error
Cleary, Crowley and Mader came to the place at different
times, and Cleary and Mader used vile and profane language

about Goldstein and told Hoffman if he would come across with $300 everything would be square, otherwise it would cost Hoffman $500, and he would wake up some morning and there would not be any windows in his store front. One morning shortly afterward Hoffman found three plate glass windows smashed and attempted to get glass from the dealers and was sent by them to Johnson's saloon, where he saw Mader, who demanded $500, and told Hoffman that unless that sum was paid the glass would not be put in. Cleary and Mader conferred aside and finally agreed to take $400, which was paid. The other cases were of the same nature. The victim found himself in a position where he was unable to get his glass re-set and was directed to the saloon and given the alternative of letting his glass remain out and his building boarded up or exposed to the elements or submit to extortion.

It is objected that the court erred in requiring the plaintiffs in error to stand up for the purpose of enabling witnesses to state whether they were the persons referred to by the witnesses. It is contended that this ruling was compelling one accused of crime to give evidence against himself. But that is not so. *Gardiner* v. *People*, 144 N. Y. 126; *Nevada* v. *AhChuey*, 14 Nev. 81; *State* v. *Reasby*, 100 Iowa, 332; *State* v. *Ruch*, 194 Mo. 434; *People* v. *Oliveria*, 127 Cal. 380; Wharton on Crim. Evidence, sec. 937.

It is argued that the court erred in ruling on the admission of evidence. There was evidence, already stated, of more than fifty cases, all substantially alike, and the objection is that there was no evidence connecting any of the defendants with the breaking of glass and smashing the windows. Some of the counts charged a conspiracy against persons to the grand jurors unknown, and it was proper to prove all the instances if they implicated the plaintiffs in error. Where certain events having a natural connection follow each other frequently with uniformity, the necessary inference is that they are referable to the same cause. The

evidence was that the blacklist was made, the windows broken, the dealers in glass refused to furnish glass and directed the owner to the saloon where the plaintiffs in error, who had made the blacklist, had their headquarters, and extorted money from him as a condition of removing his property from the list and having his glass re-set. These facts lead to the irresistible conclusion that they were all parts of one systematic scheme and that the breaking of the glass was caused by the plaintiffs in error.

No harm could possibly have come to the plaintiffs in error by reason of permitting Emma Holm, a stenographer in the office of the Painters' District Council, who prepared and mailed the glass list and who had identified various lists, to say that she would make the same statements about other lists.

The court called witnesses and examined them at the request of the People, and this is alleged as error. Two of the witnesses called were business agents associated with the plaintiffs in error and the other two were indicted with the plaintiffs in error but not on trial. Naturally the State's attorney would not vouch for their credibility, and the court did not err in calling and examining them.

The court permitted the State's attorney to cross-examine some witnesses called by him. Their answers were evasive and they had made statements to the State's attorney or the grand jury different from their testimony, and the court was right in allowing the State's attorney to cross-examine them in regard to those statements.

Witnesses were called whose names did not appear on the back of the indictment, but the law does not require the names of witnesses to so appear except those who testified before the grand jury, and it was within the discretion of the court to allow the other witnesses to be called, upon reasonable notice to the plaintiffs in error. The exercise of discretion in such a case is not a subject for assignment of error. *Bulliner* v. *People,* 95 Ill. 394.

It is claimed that the court erred in not requiring the People to elect upon which count or counts they would proceed. The conspiracies charged in the various counts were different parts of one conspiracy, and the right to demand an election does not apply in such a case. *Andrews* v. *People,* 117 Ill. 195.

A general assault is made upon the trial judge, and it is charged that by his attitude, conduct and demeanor he manifested hostility to the defendants. There is not a shadow of foundation for such a charge. The record shows that during a trial in which eight weeks were consumed in securing a jury, during which 1402 jurors were called into the box and 50 or 60 of them upon examination said they could not be qualified jurors because of fear of physical violence and destruction of their property, and during the tedious trial following the selection of a jury occupying several months, with six attorneys representing the defendants and making every sort of objection, the judge maintained an attitude of absolute neutrality and impartiality. The judge is a necessary factor in the administration of justice, and it is never improper for him to aid in bringing out the truth in a fair and impartial manner, and in this case the judge performed the difficult task set for him with patience and perfect neutrality.

Objection is made to the argument of the assistant State's attorney. Much of what was objected to was a perfectly legitimate argument on the evidence, and from the nature of the case it was the right of the assistant State's attorney to call upon the jury to do their duty intelligently, honestly and courageously. The only thing in the argument worthy of notice is the following: All of the plaintiffs in error except Mader and Crowley testified in their own behalf. The attorney representing Mader and Crowley candidly stated to the jury the embarrassing situation in which he found himself in making a defense for fear of disclosing matters that might be used against his clients in the Federal

court, and said that he was not going to get into a position where, if he could keep his clients out of the frying pan in the criminal court, he might get them into the fire over in the Federal court. They were proved guilty beyond any sort of doubt. At the conclusion of the evidence the State's attorney had dismissed as to the defendants Lindelof and Geimer, and an attorney for some of the defendants sought to benefit his clients by denouncing the State's attorney and holding him up before the jury as an object of execration. He charged the conduct of the State's attorney with respect to Cleary, Lindelof and Geimer, in charging them with crime without a scintilla of proof, as far beyond the horror of anything done by any defendant, and said: "Good God! What more damage has been done to anyone in this community than the State's attorney inflicted on Raymond Cleary, Lawrence P. Lindelof and Edward Geimer! They have branded them with stigma that will follow them to their graves." He presented this charge against the State's attorney as an argument in favor of his clients, and told the jury they would have a right to consider everything that had taken place in their presence in making up their verdict in the case. Another attorney upbraided and condemned the State's attorney for keeping Geimer and Lindelof in the case until the close of the evidence, lavished praises on them and expressed his willingness to go to the penitentiary to serve a year of his client's time. These attorneys deemed the castigation of the State's attorney concerning his treatment of men with whom the jury had nothing to do, a defense to their clients who were on trial. By their vituperation they put the State's attorney on the defense, and he had a right, as a defendant, to answer the charge. In doing so the assistant State's attorney said that he did not personally want to *nolle* as to Lindelof and Geimer but was outvoted. He stated the fact of Lindelof being around the place and knowing of the complaints coming in as showing he was guilty, that he wanted to see Lindelof take the stand, and that

"when you make a charge against an honest man he invites investigation and puts himself there,"—indicating the witness stand. One of the attorneys objected, but the objection was not specifically made for Mader and Crowley, who were the only defendants who had not testified, nor by the attorney who made the argument before mentioned in their behalf. The court explained to the jury that during their examination, and afterward, the defendants' counsel had informed them that a defendant may or may not take the stand, as he sees fit, and if he does not there shall be no presumption against him because of that fact, and directed the jury to dismiss what had been said from their minds. A written instruction was also given to the same effect. The attorney who argued to the jury for the defendant Clauss, who testified and was found not guilty, and Mader and Crowley, who were found guilty, practically told the jury that Mader and Crowley did not take the stand for fear of disclosing matters which might be used against them in the Federal court, so that if he got out of the frying pan in one court he would get into the fire in another. Regardless, however, of the explanation which had been given by the attorney, and the fact that what was said about Lindelof and Geimer might possibly be construed as an indirect reference to the failure of Mader and Crowley to testify, the reason offered by the State's attorney in defense of the charge made was justifiable. The complaint of the plaintiffs in error, under the circumstances, ought not to be countenanced or entertained.

Objections were made to the rulings of the court on the instructions, but there was no error in advising the jury of the law.

The judgment is affirmed.        *Judgment affirmed.*