(No. 29216.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LEWIS RAYMOND, Plaintiff in Error.

*Opinion filed January 23, 1946—Rehearing denied March 14, 1946.*

ELLIS & WESTBROOKS, WILLIAM C. MARTIN, and KIM-BALL SMITH, (RICHARD E. WESTBROOKS, of counsel,) all of Chicago, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and WILLIAM J. TUOHY, State's Attorney, of Chicago, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, JOSEPH A. POPE, and C. D. PEMBERTON, all of Chicago, of counsel,) for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

By this writ of error plaintiff in error seeks the reversal of a judgment of the Appellate Court, First District, affirming a judgment of the municipal court of Chicago, finding him guilty of pandering, and sentencing him to the house of correction for six months and to pay a fine of $300.

August 24, 1944, an information signed by Helen Broeker was filed in the municipal court of Chicago, charging that plaintiff in error, Lewis Raymond, on August 23, 1944, unlawfully accepted and received three dollars which were a part of the earnings of said Helen Broeker from the practice by her of prostitution, contrary to the statute defining the crime of pandering. Plaintiff in error filed a motion to quash, which was denied. No complaint as to this ruling was made in the Appellate Court. On the same day an information, also signed by Helen Broeker, was filed in the same court, which charged that Tony Aversa, *alias* Tony Udell, caused, induced, persuaded and encouraged Helen Broeker, who was an inmate of a certain house of prostitution known to her to be a house of prostitution, to remain therein as such inmate by the use of certain promises and threats, contrary to the statute concerning

pandering. Motion by Aversa to quash was denied. Aversa was found guilty. Plaintiff in error and Aversa each sued out a writ of error from the Appellate Court where the cases were consolidated and the judgments of the municipal court were affirmed. Review here is sought only by Raymond.

The abstract here filed shows that both defendants elected to waive a jury and submit to the court for trial and that the evidence was heard without objection in both cases. At the hearing the court found both defendants guilty in manner and form as charged in the informations. Written motions for a new trial and in arrest of judgment were overruled and judgment and sentence entered as above stated.

An agreed statement of the evidence was presented to the trial judge, approved and ordered filed. It was therein stipulated that the following was the evidence on the trials: Helen Broeker, the complainant, testified that while employed as a "26" girl at the Best Bet inn, Broadway near Barry avenue, Chicago, Illinois, the defendant Anthony Aversa, a patron of the place, played the "26" game with her, and while playing the game she told him she recently came to Chicago from Wisconsin, and this was the best job she could obtain; that Aversa told her he was a business man, with good connections, and could get her a good job; that he took her telephone number. The following week he called her, requesting that she meet him on the corner of Diversey boulevard and Clark street in Chicago. She met him and he took her to the DeLazon restaurant on Diversey boulevard where he introduced her to a man he said was his brother, and a young lady, Dorothy Udell, whom he stated was his sister. During the two hours spent there they had dinner and discussed a possible job for her. There was no discussion concerning sex, immoral or illicit dealings. From the restaurant all went to Aversa's apartment at 540 Wellington street, Chicago. Aversa's brother

left, and Aversa, after an absence of about five minutes, said to her: "How about moving to a nicer hotel?" that he could arrange for it; that when she said she could not afford it and that she owed a small bill at the hotel where she was living, Aversa said he would pay her bill of $7 and he would pay the rent of the room at a better hotel. Aversa telephoned the hotel where she lived, told them she was checking out and that he would call for and pick up her personal belongings. She remained with Dorothy Udell. Later Aversa called and told them to meet him at the Bentemere hotel on Diversey boulevard. She and Dorothy Udell went to the latter hotel, where she was met by the bellboy, Lewis Raymond, (plaintiff in error,) who said: "You are already registered, I will take you up to your room." She found her belongings in the room and a short time later Aversa came to the room and told her the bellboy would bring men to her room for intercourse; that she was to get at least $5 from each man for each act, and turn the money over to Lewis Raymond, (plaintiff in error,) who would in turn give it to Aversa. He told her she would get $2 out of every $5, and that he would be back later. The bellboy, Lewis Raymond, brought up three men that night and she had sexual intercourse with them, receiving a total of $9, which she turned over to Raymond. The last act of intercourse took place about 2 A.M. on August 24, 1944; that later Aversa returned, told her that from now on she was not to go out and make any dates or have any affairs except as Raymond arranged; that if she did he would break every bone in her body. She went to sleep and in the morning talked with her girl friend and went to the police about 11 A.M. On cross-examination she admitted she had sexual relations with men in Wisconsin prior to meeting Aversa; that men had visited her room in Chicago but denied having sexual intercourse with them. She also admitted she gave no money to Aversa. Dorothy Udell testified admitting she lived

with Aversa in the apartment visited by Helen Broeker, denying Aversa's brother was with them at the DeLazon restaurant, and denying conversation with the prosecutrix concerning sex matters.

Plaintiff in error denied that he brought any men to the room of the prosecuting witness or that he received any money from her. He did not deny her testimony that he met her at the Bentemere hotel and told her she had already been registered and that her luggage was already in the room. He testified he was 32 years old and had never been arrested or been in trouble before. On cross-examination he admitted he knew Aversa before August 23, 1944. Anthony Aversa testified he was 35 years old; that he had never been in trouble before; that he met Helen Broeker and played the "26" game with her at the Best Bet inn; that she said she was lonesome and he invited her to dinner with his girl friend; that she asked him to help her move to the Bentemere hotel, which he did; he denied the charges in the information; denied that he discussed any sex matters with her or that he told her that the bellboy, Lewis Raymond, would bring men to her room; denied he told her she was to get $5 for each act of intercourse and that it was to be turned over to the bellboy, and denied making any threats. On cross-examination he admitted he had had no income for the past six months, explaining by saying he had been sick and had a serious operation, and that prior to his illness he had worked in a gambling place for several years. He does not explain why he moved her belongings to the Bentemere hotel, except that she asked him to do so. There is no evidence that complaining witness knew anything about that hotel. He does not deny that he arranged for her registration at that hotel or that he paid the $7 which she owed her former landlady.

The record shows no objection to the hearing of the two cases by the trial judge at the same time, nor does the

stipulation of agreed facts show that there was any objection to any part of the testimony.

A certified copy of the abstract, brief and argument filed in the Appellate Court, filed herein, together with that court's opinion, reveal that that court, in affirming the judgments, passed upon the only errors argued in the briefs: that it was error to deny the motion to quash the information and that the People failed to prove beyond a reasonable doubt that the defendants were guilty of the crime charged in the information. Other errors assigned, but not argued, were waived in that court.

Plaintiff in error assigns as error here that the Appellate Court erred in affirming the judgments of the municipal court because the municipal court erred in denying the motion to quash, as the law upon which the prosecutions are based is unconstitutional and void, and conviction under such law deprives him of due process of law as guaranteed by section 2 of article II of the constitution of Illinois and section 1 of the fourteenth amendment to the Federal constitution; that the information is insufficient to comply with the requirements of section 9 of article II of the Illinois constitution and the judgment based thereon is void, and that the judgment of the Appellate Court affirming the void judgment is void. It is a sufficient answer to these complaints that plaintiff in error waived the constitutionality of the act on which the information was based by seeking review in the Appellate Court, and cannot have that question reviewed here.

Plaintiff in error raises here, for the first time, numerous constitutional questions. By taking a writ of error from the Appellate Court he waived the right to raise constitutional questions. *People* v. *Billow,* 377 Ill. 236; *People* v. *Rosenthal,* 370 Ill. 244.

Plaintiff in error's counsel also say it was error to try two separate individual defendants, charged with separate

and distinct crimes alleged to have been committed on different and separate dates, without any allegation or charge of conspiracy or joint action. The record shows that this was done with the consent of both defendants. There is no merit to this complaint.

Plaintiff in error's counsel also argue that the State failed to prove him guilty beyond a reasonable doubt. In considering the evidence to determine whether the court was warranted in finding plaintiff in error guilty, it must be kept in mind that the record of the evidence is limited to a stipulation and agreed statement of evidence as testified to by the several witnesses, incorporated in the record in lieu of a bill of exceptions. It is contended that the evidence fails to prove that plaintiff in error knew or knowingly accepted, as required by the statute, any funds or monies from the prosecutrix derived from her earnings as a prostitute. The prosecutrix testified that Aversa instructed her that plaintiff in error would bring men to her room; that she was to deliver $3 to plaintiff in error for each man he took to her room; that plaintiff in error, the first night she occupied the room in the Bentemere hotel, brought three men to her room; that after they left she gave him $9. This evidence, in the record without objection, is sufficient to show knowledge of plaintiff in error of the source from which the money came. It is urged there is no corroboration of the testimony of the prosecutrix. Without repeating the agreed statement of facts, it is sufficient to say that failure on the part of plaintiff in error to deny vital parts of her testimony in which he was involved, as hereinbefore pointed out, together with the whole scheme as portrayed by the evidence, shows this a typical case of pandering. Aversa, admittedly without source of income for more than six months, admits he was the cause of her going to the Bentemere hotel where plaintiff in error registered her

and looked after her luggage. Prosecutrix was a stranger in the city of Chicago and a stranger to plaintiff in error and Aversa. Dorothy Udell was, according to Aversa's testimony, living with him as his "girl friend." Little credence can be given her testimony. We are convinced that the evidence justified the finding of guilt. The judgment of the Appellate Court is affirmed.°

*Judgment affirmed.*