(No. 38611.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
JOSEPH MCDONALD WARD, Appellant.

*Opinion filed January 21, 1965.—Rehearing denied March 17, 1965.*

Eldon M. Durr, of Edwardsville, for appellant.

William G. Clark, Attorney General, of Springfield, and Dick H. Mudge, Jr., State's Attorney, of Edwardsville, (Fred G. Leach, Assistant Attorney General, and Joseph R. Bartylak, Assistant State's Attorney, of counsel,) for the People.

Mr. Chief Justice Klingbiel delivered the opinion of the court:

After a jury trial in the circuit court of Madison County Joseph McDonald Ward was found guilty of murdering his wife Pauline. He was sentenced by the court to imprisonment for a term of not less than 14 nor more than 18 years. He appeals, assigning numerous errors occurring in the trial of the case.

No question is raised about the sufficiency of the evidence. It shows that Mrs. Ward was kicked or beaten to death in the early morning hours of August 11, 1963, after defendant had taken her away from a tavern in his car. He was employed as a groom at a race track near Collinsville, Illinois, and she worked as a waitress and the like at businesses located nearby. Both were heavy drinkers. On the night of August 10, Mrs. Ward, who was apparently a somewhat quarrelsome woman, created a disturbance at a tavern near the race track. She refused to leave at the 2 A.M. closing time, and it became necessary for the proprietor to put her out by force. He turned her over to de-

fendant, who had already left the tavern. She was still unruly and troublesome, fighting defendant and cursing him as they drove away in his car.

According to defendant's testimony they stopped near the roadway leading to the barns. She was still punching and slapping at him and he kept pushing her away. They both got out of the car, which defendant had parked along side of the road, and began hitting and kicking at each other. Defendant testified that he blacked out, and that the next thing he remembered he was leaning against the car and noticing his wife lying on the ground. Not able to revive her he placed her on the seat and drove off the road about 40 or 50 feet into a vacant area where he again tried to revive her. Failing to do so he concluded there was nothing he could do.

He opened the trunk of the car and put his wife inside. By this time it was daylight. He went to a restaurant, had some food and met a friend named Jim. The two then drove, in defendant's car, to a tavern Jim knew of, where they resumed drinking. About three o'clock in the afternoon defendant was back in the tavern of the night before. Seeking advice, he told some friends what he had done and showed them his wife's body in the trunk of his car. When it was about dark he went to his wife's cabin and fell asleep. He was awakened shortly after 10 P.M. when police officers knocked at the door. He gave them the keys to his car at their request, and they opened the trunk. Medical evidence subsequently showed the deceased had suffered very extensive traumatic injuries. There were bruises over most of the front of the body, the nose was broken, every rib was fractured, both lungs collapsed, the neck cartilage was fractured, liver and spleen were crushed, and there was a brain concussion.

The State sought to introduce into evidence certain photographs of the deceased taken after the autopsy. On objection by defendant the court ruled them inadmissible.

Defendant nevertheless contends error was committed in receiving testimony describing them, apparently to determine their admissibility. No objection was made to the testimony in question, nor do we think defendant was prejudiced by it. The contention must be rejected.

He complains generally that other incompetent and inflammatory evidence was admitted, that several given instructions are erroneous, and that the whole set is insufficient to "define the various issues." None of the evidence complained of is specified, nor is any one of the instructions objected to set forth in the brief. We have nevertheless examined both the evidence and the instructions and find nothing therein that could reasonably have affected the result of the trial. A reading of the evidence does not leave the slightest doubt of guilt, and the trial, which consumed nine days, was conducted in a fair and impartial manner. Even though error may have been committed in giving or refusing instructions it will not always justify reversal when the evidence of defendant's guilt is so clear and convincing that the jury could not reasonably have found him not guilty. (*People* v. *Davis,* 10 Ill.2d 430.) Such is the case here.

Without stating exactly what occurred at the present trial, defendant refers to *Escobedo* v. *Illinois,* 378 U.S. 478, 12 L. ed. 2d 977, contending generally that after a suspect has been taken into custody no statement he makes to the police is admissible in evidence unless a lawyer had been present at the time. It is then argued that "In the Ward case before this Court in this proceeding the Defendant was accused and the suspect and had been taken into custody by the Sheriff of Madison County and was being held and detained when the statements were taken and the record does not show that constitutional warnings were given the Defendant, a man of low educational attainment and a man who made a living of mediocre standards jostling race horses around a race track." A search of the record discloses

testimony to the effect that after he was apprehended defendant told police what had happened and pointed out the place where the beating occurred. Two statements in writing signed by defendant in the sheriff's office were admitted in evidence without objection. Defendant had been told of his right to remain silent, and also of his right to counsel but he did not express a desire for an attorney until after the statements had been taken. We do not think complaint can now be made of their admission in evidence. Not only was no objection made at the trial, but the contents of the statements are substantially the same as defendant's testimony at the trial. Under these circumstances there could have been no error in allowing their admission in evidence.

Defendant was represented at the trial by the public defender and an assistant, both of whom he now claims failed to adequately protect his interests. It is insisted that counsel should have objected to admitting the statements and to describing the post-autopsic photographs. It is argued that his own counsel compounded the injuries to his cause by cross-examining about what the pictures showed, and that all such details were highly inflammatory and prejudicial. It is further maintained that because of these "errors" and the alleged inadequacy of the instructions "the jury was not afforded the opportunity to make a clear determination of manslaughter, or not guilty * * *". We have found nothing in the record to indicate that defendant was denied an adequate representation by counsel. The mere charge of incompetency is not enough. (*People* v. *Squires,* 27 Ill.2d 518.) In order to sustain the present contention defendant must clearly establish actual incompetency of counsel and substantial prejudice resulting therefrom, without which the outcome would probably have been different. (*People* v. *Cox*, 22 Ill.2d 534.) Such manifestly cannot be done on this record. In rejecting a contention similar to the present one this court recently affirmed a conviction of as-

sault with intent to commit murder, for which a sentence was imposed of imprisonment for fifteen to twenty years. (*People* v. *Coolidge,* 26 Ill.2d 533.) We pointed out that "to warrant a reversal because of the incompetency of counsel, the record must clearly establish not only that counsel performed his trial duties in an incompetent manner, but also that defendant was substantially prejudiced thereby. (*People* v. *Robinson,* 21 Ill.2d 30; *People* v. *Morris,* 3 Ill.2d 437.) The evidence against defendant was overwhelming. He committed a brutal assault in an attempt to commit a robbery and was apprehended on the premises in the act of beating his already seriously wounded victim. In our opinion there was nothing counsel could have done which would have changed the result, nor were there omissions in the defense which could be said to have operated to defendant's prejudice." Similar observations are applicable in the case at bar. There is no merit in defendant's position.

A more serious objection is the assertion, made for the first time in this court, that one of the jurors was a special deputy sheriff. Nothing appears to indicate that anyone knew or learned of the alleged fact before this appeal was taken. In any event the post-trial motion fails to include that as a ground for new trial. Affidavits of both the juror in question and the sheriff of the county have been filed with the clerk of this court purporting to show that the juror is an employee of an oil company and has never been assigned any duties as special deputy sheriff. His commission was issued as a courtesy only, with no compensation, and he had never exercised any peace officer authority. It appears that he had no more than a speaking acquaintance with the sheriff.

On careful consideration we think the presence of this individual on the jury was not sufficiently prejudicial to warrant reversal. To be sure, the guaranty of trial by jury insures to a defendant in a criminal case the right to have

the facts in controversy determined ·by twelve impartial jurors. (*People* v. *Kolep,* 29 Ill.2d 116, 126.) But this rule does not relieve a defendant of his duty to ascertain whether impartiality exists. As this court has heretofore observed, in refusing to upset a conviction on the ground that one of the jurors was later discovered to be an alien, "It is the duty of parties to ascertain, by proper examination, the competency of jurors. If this be neglected, the verdict ought not to be disturbed on account of an alleged incompetency of the character we are considering." *Chase* v. *People,* 40 Ill. 352, 358. See, also, *People* v. *Marsh,* 403 Ill. 81.

In the case at bar nothing appears to show the juror in question had expressed opinions upon the merits of the case, or was in fact biased against defendant and unable to weigh the evidence impartially. Under the circumstances of this case we think defendant ought to make a stronger showing of actual prejudice on the part of the juror, rather than a mere presumption thereof arising from the association shown here, before a reversal is called for. The fact, standing alone, that one of the jurors held a merely formal position of special deputy sheriff cannot be said to have influenced the verdict, for in view of the overwhelming proof of defendant's guilt the jury could scarcely have arrived at any other verdict. As this court has repeatedly observed, the purpose of review in a criminal case is not to determine whether the record is perfect but rather to determine whether the defendant has had a fair trial under the law and whether his conviction is based upon evidence establishing his guilt beyond all reasonable doubt. (*People* v. *Kirkwood,* 17 Ill.2d 23; *People* v. *Davis,* 10 Ill.2d 430; *People* v. *Booker,* 378 Ill. 334.) In view of the undisputed evidence of defendant's guilt, and of the fact that there is no affirmative showing of actual bias on the part of the juror in question, his presence on the jury may be considered equivalent to an irregularity only. And a mere irregularity in the selection of a jury does not call for a reversal unless it is also

shown that the defendant was in some manner prejudiced thereby. *Siebert* v. *People,* 143 Ill. 571.

After thoroughly considering all the matters assigned and argued in this court we conclude that defendant had a fair trial, free from prejudicial error. There is nothing in the record tending to show provocation sufficient to excuse or to mitigate the offense. Indeed, upon the evidence here the court might well have been justified in imposing an even more severe punishment.

The judgment of the circuit court of Madison County is affirmed.

*Judgment affirmed.*

*Opinion filed January 21, 1965.—Rehearing denied March 17, 1965.*