**People of the State of Illinois, Plaintiff-Appellee,
v. William Jennings, Defendant-Appellant.**

**Gen. No. 51,207.**

First District, Third Division.

May 18, 1967.

James P. Ryther, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and E. Roger Horsky, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

Defendant appeals from a conviction for armed robbery which occurred at approximately 11:00 a. m. on November 18, 1964. This charge was founded on Indictment No. 64–3621. The defendant was also tried at the same time on a charge of attempt (robbery) which occurred on November 7, 1964. This charge was contained in Indictment No. 64–3610, and the jury could not agree relative to the charges in Indictment No. 64–3610 and a mistrial was declared as to that indictment.

On appeal the defendant contends (1) that the State did not produce sufficient evidence to establish the guilt of the defendant beyond a reasonable doubt; (2) that the court erred in permitting defendant to be tried on two separate and unrelated matters for which he had been charged in two separate indictments; (3) that the court erred in failing to advise the defendant of his rights to refuse to be tried on two separate indictments; (4) that the court erred in failing to instruct the jury that the evidence presented with respect to one of the indictments should not be considered as influencing or controlling with respect to the other indictment, and (5) that the court erred in permitting evidence to be introduced at the trial which was procured directly as the result of defendant's arrest, which he claimed was in violation of his rights secured by the Fourth

and Fourteenth Amendments to the Constitution of the United States.

The evidence adduced at the trial relative to indictment No. 64–3621 was as follows:

Donald Hennelly testified that he was employed as a routeman by Monarch Laundry Company; that on November 18, 1964, at 10:50 a. m. he was in his truck when a man on the sidewalk asked him if he would pick up some laundry for him. That man was the defendant. Hennelly followed him into the vestibule of a building at 415 East 80th Street. They talked along the way. When they reached the second floor landing of the building the defendant pulled a gun and put it to the side of Hennelly's head and told Hennelly to be quiet or he would kill him. Hennelly put up his hands and the defendant told him to face straight ahead on the stairway. The defendant told Hennelly he was a dope addict and that he would kill Hennelly if he called out. The defendant then took $61.50 out of both of Hennelly's pockets. The defendant ordered Hennelly to take off his shoes and trousers and the defendant threw them up to the third-floor landing. The defendant then left the building. Hennelly further testified that the lighting conditions were adequate with a big window on each landing at each floor; that he looked at the face of the defendant and observed his height, build and general characteristics, and about five minutes elapsed during the whole transaction. After the incident, Hennelly immediately phoned the police and gave them a description of the man who had robbed him. Hennelly further testified that on November 24, 1964, he attended a lineup at a police station, and Hennelly, after seeing the defendant and listening to him speak, positively identified the defendant as the robber. During the trial Hennelly again positively identified the defendant as the robber. Hennelly also testified on cross-examination, in answer to a question as to

whether he told the police that the defendant was wearing a hat, that the defendant was wearing a green small-brimmed hat. At that point during the trial a one-page police report was submitted to defense counsel and purported to be the report of the police officer who arrived at the scene on November 18, 1964, at 11:00 a. m.

Police Officer Burns testified defendant was arrested at his apartment November 18, after an investigation concerning a series of robberies. At the time of the arrest the police had a description given by both Hennelly and Lindstedt. Lindstedt was the victim in Indictment No. 64–3610.

The defendant testified that the police, prior to his arrest, had an artist's conception of the robber, and one officer told the defendant it "favored" or looked like him.

The police officers who attended the lineup were also called. They testified that Mr. Hennelly had identified the defendant at the time of the lineup.

The defendant testified that on November 18, 1964, he was either at St. Leonard's House, a halfway house, instituted for the rehabilitation of ex-convicts, or his apartment, or en route between these places during the time of the robbery. He further testified that he had been stopped on the street by police officers prior to November 23, the date on which he was arrested. They asked him to get into their car and asked the defendant questions about fifteen or twenty robberies. The police officer showed the defendant an artist's conception or sketch, and the defendant told the police officer he had never seen the man. One policeman said, "He favors you." The defendant further stated that the policeman's partner disagreed. They obtained his name and address and let him go. The next time he saw the police was on November 23 when they came to his home and arrested him. The defendant stated that he let the police

in and they searched him and the apartment, and did not find any money or any gun.

Father Douglas Wolfe, Director of St. Leonard's House, testified that he had a definite recollection of seeing Jennings at St. Leonard's on the evening of November 18. He also testified that he thought the defendant was at St. Leonard's in the morning, but was not sure.

 The first contention of the defendant is that he was not proven guilty beyond a reasonable doubt of the charge of armed robbery of Donald Hennelly. He argues that since the defendant's conviction was based entirely upon the identification made by the complaining witness, Mr. Hennelly, and since there was no gun found and no money found, the evidence was insufficient and the State's case had not been proven beyond a reasonable doubt. With this contention we disagree. Our courts have repeatedly held that the testimony of one witness alone, when it is positive and the witness credible, is sufficient to convict even though the testimony is contradicted by the accused. People v. Miller, 30 Ill 2d 110, 195 NE2d 694; People v. Pride, 16 Ill2d 82, 156 NE2d 551. Hennelly's identification of the defendant was positive and was not shaken on cross-examination. The defendant relied upon an alibi defense. The jury heard and observed the witnesses and found against the defendant. The court in People v. Carpenter, 28 Ill2d 116, 190 NE2d 738, on page 122 stated:

"This court has repeatedly declared a conviction will not be disturbed unless it clearly appears that there is not sufficient credible evidence to establish the guilt of the accused beyond a reasonable doubt. Where the evidence on an issue is conflicting but legally sufficient if the prosecution's witnesses are believed, the question is for the trier of fact.

(People v. Guido, 25 Ill2d 204; People v. Glass, 16 Ill2d 595; People v. Sain, 384 Ill 394.)"

██ ██ The question of credibility of the witnesses is to be determined by a jury, as it was in this case. The jury had the opportunity to observe the witnesses, their candor or lack of candor, and their demeanor while testifying, and this court will not interfere with that finding by the jury merely because there is conflicting testimony.

Defendant argues that there is no satisfactory explanation in the record as to why Lindstedt was called back to a second lineup. Lindstedt was the victim in Indictment No. 64–3610. The second lineup, to which the defense refers, was attended by Donald Hennelly and Bernard Lindstedt, both of whom were drivers for Monarch Laundry. Lindstedt testified that he was called back to the second lineup but that he was not required to attend it. The defendant argues that the reason for calling Lindstedt back to the second lineup is immediately obvious in that it permitted an exchange between the fellow drivers, meaning Lindstedt and Hennelly. The record, however, does not bear out the inference drawn, in that it does not show that the victims were together at the second lineup, or even that any conversation took place between them at the second lineup.

██ We are of the opinion that the defendant was proven guilty of the armed robbery of Donald Hennelly.

The second point raised by the defendant is that the court erred in permitting the defendant to be tried for two robberies in the same trial. To understand this point more clearly, as urged by the defendant, we will set forth herein the testimony adduced at the trial relative to indictment No. 64–3610. As to that indictment, Bernard Lindstedt testified that he was a laundry driver for Monarch Laundry, and that on November 7, 1964, in the area of 68th and Prairie, a man asked him to pick up some laundry. Lindstedt and the man went into

40

a building and up the stairs and there the man pulled a gun. A scuffle occurred and the man reached into Lindstedt's pocket. He did not get any money. Lindstedt was yelling and the man finally fled. The entire transaction took about ten minutes and Lindstedt had occasion to look at the man's face during the whole encounter. Lindstedt called the police and gave them a description of the man. Thereafter Lindstedt went to a lineup at 11th and State on the 23rd of November and identified Jennings, the defendant. This lineup was at about 1:00 o'clock p. m. Lindstedt further testified that he was called back to a second lineup in the evening which he attended, but that he was not required to go back to the second lineup. Lindstedt further testified that the defendant at the time of the robbery was wearing a gray plaid sports coat, a light shirt, either white or cream colored, and dark gray slacks. A one-page police report was furnished defense counsel by the State at the time of the trial. The witness further testified that the defendant was about six feet tall and that he gave the police a description of the person who attacked him on November 7, 1964.

The defendant testified that at about 8:00 o'clock on the morning of November 7 he went to St. Leonard's and was told to report to the home of Mr. and Mrs. Hanley at 1439 East 60th Place. He indicated that he arrived at the Hanleys' about 9:00 o'clock in the morning and did not leave the house until 6:30 o'clock that evening. Both Mr. and Mrs. Hanley testified on behalf of the defense.

Mr. Hanley testified that the defendant arrived at about 9:30 on November 7 and worked with a Mr. Tafford until about 7:00 o'clock that evening. He indicated that he observed the defendant every five or ten minutes during the day, suggesting that he was somewhat dubious about the fact that both workers were ex-convicts. He testified that he prepared lunch for the defendant and

observed the defendant during the period around noon on November 7.

Mrs. Hanley testified that she arrived at her home at about 12:40 p. m. on November 7, and that defendant was working at her home until between 6:30 and 7:00 that evening.

Donald Adamson, a witness called on behalf of the defendant, testified that he was employment counsel at St. Leonard's House and he verified that Jennings had been assigned work at the Hanleys' on November 7.

Father Douglas Wolfe, a witness called on behalf of the defendant, testified that the Hanleys paid St. Leonard's for the work of the defendant on November 7 and that he in turn paid the defendant. This was noted on a work ticket.

The defendant argued that it was clearly improper to have tried the defendant on the two disconnected robberies at the same time. The defendant cites section 114–7 of the Illinois Code of Criminal Procedure (Ill Rev Stats 1963, c 38, sec 114–7), which provides as follows:

> "The court may order 2 or more charges to be tried together if the offenses and the defendants could have been joined in a single charge. The procedure shall be the same as if the prosecution were under a single charge."

The defendant also cites section 111–4(a) of the Illinois Code of Criminal Procedure, 1963, which provides, in part, as follows:

> "Two or more offenses may be charged in the same indictment, . . . if the offenses charged, whether felonies or misdemeanors or both, are based on the same act or on 2 or more acts which are part of the same comprehensive transaction."

It is the contention of the defendant that since the dates of these alleged crimes were unrelated, the places

of occurrence were unrelated, the victims were unrelated, except for a common employer, and the nature of the offenses is unrelated, since one charged attempted robbery of a victim, and the other charges a completed crime of robbery of another victim, that the People should have been required to elect on which of the two felonies they relied. The defendant also points out that it is well settled that in common law the defendant cannot be forced to trial upon two disassociated felonies in the same proceeding. People v. Wolf, 358 Ill 334, 195 NE 211; People v. O'Malley, 404 Ill 165, 88 NE2d 454.

■ We feel that it is unnecessary to decide whether the defendant could be tried under the two indictments in this case due to the fact that the defendant acquiesced in the trial of the two indictments. At the outset Mr. Bilton, who represented the State in both of these cases, said to the judge: "Judge, the State is willing to consolidate Indictments Nos. 64–3610 and 64–3621." The Court: "Defense?" Mr. Fishman (attorney for defendant): "No objection to that, your Honor." The Court: "No objection to the State consolidating Indictments Nos. 64–3610 and 64–3621. They will be consolidated for trial."

> "It is a well established general rule that a party will not be permitted to allege an error committed against him in the trial court in which he, himself, acquiesced or which was committed or invited by him." ILP Vol 15, Criminal Law, § 902.

■ In People v. Watson, 394 Ill 177, 68 NE2d 265, the court held that constitutional guaranties with respect to the conduct of criminal trials can be waived and, when so waived, the consequences of the waiver are binding upon the accused.

■ In People v. Washington, 342 Ill 350, 174 NE 405, the court held that where a jury had been impaneled and sworn and heard some of the witnesses and

the jury was discharged on agreement of counsel, the defendant could not claim, after a conviction by a subsequent jury, that he had been twice placed in jeopardy for the same offense. The defendant in this case is in no position to complain, having consented to the consolidation of the two indictments for trial.

 In People v. Raymond, 393 Ill 147, 65 NE2d 341, two separate individual defendants were charged with separate and distinct crimes alleged to have been committed on different and separate dates, without any allegation or charge of conspiracy or joint action. There the court held that the record showed that the cases were tried together with the consent of both defendants, and therefore there was no merit to the charge of error. The defendant having consented to the consolidation of the two separate indictments cannot at this time urge it as error.

 The next contention urged by the defendant is that the court erred in failing to advise the defendant of his right to refuse to be tried on two separate indictments and in support of that argument cites Glasser v. United States, 315 US 60. That case, in our opinion, does not support defendant's contention. In that case defendant Glasser was himself an attorney. He had employed counsel to defend him. On the day before trial, the attorney employed to represent Kretske asked for a continuance. The court denied the continuance and appointed another attorney. The following day when the case proceeded to trial the attorney appointed by the court informed the court that Kretske did not wish to be represented by him. The court then asked Glasser's attorney if he could act as Kretske's attorney, to which appointment the attorney for Glasser objected because the defenses of Glasser and Kretske were not the same, and because of certain conversations which would be testified to at which the defendant Glasser was not pres-

ent but in which Kretske participated. The defendant Glasser objected to the court appointing his attorney to represent the defendant Kretske. Thereafter defendant Kretske, after some colloquy, told the court that he had just spoken to Glasser's attorney and that Glasser's attorney told him if the court wished to appoint him he would accept the appointment. Glasser's attorney was then appointed to represent Kretske. Glasser remained silent, and there is nothing in the record to indicate that he at any time withdrew his objection. The court on page 71 stated:

> "The court made no effort to reascertain Glasser's attitude or wishes. Under these circumstances, to hold that Glasser freely, albeit tacitly, acquiesced in the appointment of Stewart is to do violence to reality and to condone a dangerous laxity on the part of the trial court in the discharge of its duty to preserve the fundamental rights of an accused."

In the instant case there is no indication that the defendant in any way opposed going to trial on both indictments before the same jury, and the Supreme Court of the United States in the Glasser case relied upon the fact that Glasser, the defendant, had personally objected to the appointment of his attorney as attorney for Kretske and the trial court did not reascertain Glasser's attitude or wishes. We do not believe that the Glasser case is controlling on the facts before us.

The defendant next contends that the court erred in failing to instruct the jury that the evidence presented with respect to one of the indictments should not be considered as influencing or controlling with respect to the other indictment. There is no merit to this point inasmuch as the defendant offered no instruction relating to the separate indictments.

45

In People v. Rave, 364 Ill 72, 3 NE2d 972, the court pointed out that an objection to the failure to instruct the jury is waived if not timely and properly presented.

The last contention of the defendant is that the court erred in permitting evidence to be introduced at the trial which was procured directly as a result of an unconstitutional arrest of the defendant. In support of this contention the defendant argues there is nothing in the record which connected the defendant Jennings with the robbery prior to his arrest, and there is a complete absence of any information regarding the nature of the investigation conducted by the police. Section 107–2, chapter 38 (Ill Rev Stats 1963, c 38, § 107–2) provides that a peace officer may arrest a person when he has reasonable grounds to believe that the person has committed or is committing an offense. The Supreme Court in People v. Peak, 29 Ill2d 343, 194 NE 2d 322, held that while bare suspicion would not justify a police officer in making an arrest without a warrant, nevertheless, probable cause or reasonable grounds means something less than the evidence which would result in a conviction. The court on page 348 said:

> "Probable cause for arrest exists when the facts and circumstances within the arresting officer's knowledge, and of which he had reasonable and trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in believing that an offense has been committed, and that the person arrested is guilty. People v. Fiorito, 19 Ill2d 246; People v. Jones, 16 Ill2d 569; People v. LaBostrie, 14 Ill2d 617."

The record here discloses that police officer Burns testified that the defendant was investigated for a series of robberies. Two of the victims of the series of robberies were face to face with the robber and gave de-

46

scriptions to the police. Hennelly testified that he had a good look at the robber's face, height, build and general characteristics. He viewed him at close range for more than five minutes. Immediately thereafter he phoned the police and gave them a description of the robber. The State in this case gave to the defense a copy of the police report. Lindstedt viewed his assailant for ten minutes and had occasion to look at the man's face the whole time. He observed his assailant's height, weight, build and general characteristics and gave a description of defendant to police. Lindstedt in court testified that the robber wore a gray plaid sports coat, light shirt and dark gray slacks. An artist's conception was drawn of the defendant and defendant testified that an officer said it favored or strongly looked like the defendant. In addition to the description of the defendant by the victims and the artist's conception, the police also knew the robber was or at least had been a dope addict. The defendant told the victim he was a dope addict and said he would kill the victim if he made an outcry. We believe these facts constitute reasonable grounds of probability supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the defendant did commit the crimes.

The defendant in his brief admitted that the police were given a description of the robber and as a result of this description the defendant was arrested. Two victims saw the defendant so well that an artist's conception was drawn and they were able to positively identify the defendant at a lineup and in open court.

■■■ Defendant cites Beck v. Ohio, 379 US 89. In that case there was no specific charge against Beck. The record in that case disclosed that there was no crime of which the defendant was even suspected. No victims of Beck identified him or gave a description which would fit him. There was no reasonable ground to believe that an offense had been committed by Beck. The court

47

there held that while it was possible an informer did in fact relate information to the police which constituted probable cause for defendant's arrest, when the constitutional validity of that arrest was challenged, it was incumbent on the prosecution to show with considerably more specificity than was shown, what the informer actually said and why the police thought the information was credible. That case concerned an informer who was neither shown to be previously reliable nor corroborated, nor was it ever pointed out why the police arrested the defendant. The defendant in this case was arrested by the police on the basis of descriptions given to them by the victims, their knowledge that defendant was a narcotics addict, crimes that had been committed and reasonable grounds to suspect the defendant of being the perpetrator of said crimes.

Judgment affirmed.

SCHWARTZ and DEMPSEY, JJ., concur.