THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* TIMOTHY McMILLAN, Defendant-Appellant.

(No. 69-210;

Second District—December 3, 1970.

Ronald Alwin, of Chicago, for appellant.

William R. Ketcham, State's Attorney, of Elgin, (W. Ben Morgan, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE ABRAHAMSON delivered the opinion of the court:

The defendant, Timothy McMillan, and a co-defendant, David Meid, were charged in a one-count indictment with the offense of unlawful sale of narcotic drugs in violation of section 22—3 of the Illinois Criminal Code (Ill. Rev. Stat. 1967, ch. 38, par. 22—3.) The two were tried separately. At the conclusion of his trial, the jury returned verdicts that found McMillan guilty of unlawful sale and the lesser included offense of possession of narcotics. Judgment of conviction was entered on the verdicts and McMillan was sentenced to serve a penitentiary term of ten years to ten years and one day. He was 21 years old and apparently had no previous criminal record. Meid was also convicted and we recently considered his appeal in *People v. Meid,* (Ill.App.2d).

At approximately 9:00 P.M. on October 21, 1968, Inspector Joseph Grady of the Illinois Division of Narcotics Control and Roger Stiller, an informer, visited the home of David Meid in East Dundee. McMillan was visiting with Meid in the home at the time and went outside with him to talk to Stiller. Shortly thereafter McMillan went back inside the Meid home and was not present during an alleged conversation between Meid, Stiller and Grady in Stiller's automobile about a sale of marijuana to Grady. According to Grady, Meid was willing to sell the marijuana to Stiller but not directly to Grady. Before an agreement could be reached, Meid's father requested that they leave and Stiller and Grady left with the understanding that Meid would meet them later at the Meadowdale Shopping Plaza.

Stiller and Grady drove to the Plaza and after a short time were joined by Meid and McMillan in McMillan's car. Stiller and Grady got into the back seat of McMillan's car and, at Meid's direction, McMillan drove around the area while Meid and Grady resumed the conversation in regard to the mechanics of the sale. Grady testified that during the conversation Meid said he "got a kick out of turning on * * * teeny boppers" * * * that he had engaged in contests to see who could get the highest price for the sale of marijuana cigarettes. Grady also stated that at one point in the conversation Meid told him "Look, I'm a dope peddler * * * I have been in business for two years * * *" and that he used to deal in "hard" narcotics.

After long, and fruitless, talk on the proposed sale, McMillan, apparently for the first time, spoke up. He pointed out that it was near 11:00 P.M. and that he was in a hurry and that he would drive Grady back to the Meid home and pick up the marijuana. This arrangement was agreed upon and after Meid and Stiller left the automobile, McMillan drove Grady to a field near the home where he picked up a package that was later determined to contain marijuana. Grady objected to the size of the package and McMillan suggested that Grady place $100.00 on the dashboard of the car and talk to Meid about the exact purchase price later. Grady handed McMillan the money and he placed it in an ashtray on the dashboard. They returned to the plaza where Meid agreed, after further argument, to take $90 for the package. McMillan handed Grady $10 back and Grady and Stiller then left with the marijuana.

In the *Meid* case, we reversed the judgment of conviction and remanded on the grounds that the defendant was denied a fair trial because of improper admission of evidence. Specifically, we found that testimony relative to "turning on * * * teeny boppers" and "contests" in earlier sales was highly prejudicial and amounted to proof of other

offenses by the defendant. We further found that testimony of Meid's admission that he previously sold "hard stuff" had "* * * no probative value except to show his propensity to commit this kind of offense."

■■ Evidence of other offenses is generally inadmissible in narcotic cases unless it is used "to disclose motive, intent, premeditation, guilty knowledge, malice or a common plan or scheme." *People v. Lewerenz,* 24 Ill.2d 295, 298; *People v. Meid,* (Ill.App.2d); *People v. Brown,* 83 Ill.App.2d 457, 463.

■■ In the case now before us, the record discloses that Grady repeated his earlier testimony in virtually the same language as to the admissions by Meid made in McMillan's car. Although it is true, as contended by the State, that the statements were admissions that Meid, not McMillan, had committed earlier crimes, their presence in this trial was highly prejudicial to McMillan. It was entirely possible that the jury would connect McMillan to the boastful accounts of earlier crimes related by his friend. This possibility was sharply enhanced by the trial tactics of the prosecutor.

In his closing argument, the prosecutor argued that Stiller introduced Grady "* * * to people he knew were involved in the sale of narcotic drugs" although Stiller himself did not testify and there is no evidence that he had any prior acquaintance with McMillan. In his opening statement, the prosecutor represented that McMillan and Meid were "trafficking in narcotic drugs, particularly marijuana" and, again, no evidence was presented that McMillan himself was ever engaged in any other transaction involving narcotics. In his final argument, the prosecutor also argued:

"What about the traffic of marijuana with respect to the conversations they had. What did you think of this turning on teeny boppers? Isn't that nice? Isn't that great?"

There was, of course, no evidence whatsoever to connect McMillan with "turning on teeny boppers" but the argument, particularly in context with the testimony of Grady, tended to establish the invidious inference that such a connection did exist.

■■ In addition, McMillan was asked, during cross-examination, if he had ever smoked marijuana. He replied "Yes, sir * * * Three or four times." Again, this testimony, entirely improper and prejudicial, was stressed by the prosecutor who in final argument characterized the defendant as "an admitted user of marijuana."

■■ Although no objection was made during the trial by defense counsel either to Meid's admissions or to the arguments of the prosecutor, the total effect was to deprive the defendant of his constitutional right to a fair trial and can be considered by this court. (*People v. Weinstein,* 35

Ill.2d 467, 471; *People v. McKinstray*, 30 Ill.2d 611, 616.) In the case of *People v. Burson*, 11 Ill.2d 360, the Supreme Court quoted, with approval, at page 370 a statement that appeared on page 33 of 3 Am. Jr. sec. 248 as follows:

"The court may, as a matter of grace, in a case involving deprivation of life or liberty, take notice of errors appearing upon the record which deprived the accused of substantial means of enjoying a fair and impartial trial, although no exceptions were preserved or the question is imperfectly presented."

Although, in the nature of things, we cannot determine the effect on the jury of the improper evidence and prejudicial arguments, we "* * * cannot speculate with the rights of a defendant and say that the jury acted upon competent evidence only." *People v. Rogers*, 348 Ill. 322, 326.

██ We are of the opinion that the defendant was denied his right to a fair trial by the improper admission of evidence and argument of the prosecutor and the judgment of the trial court is therefore reversed and the cause remanded for a new trial. Under these circumstances, it is not necessary to discuss the other assignments of error raised by the defendant.

Reversed and remanded.

DAVIS, P. J. and MORAN, J., concur.