THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM L. SMITH, Defendant-Appellant.

(No. 74-274;

Fifth District—May 27, 1975.

McRoberts, Sheppard, McRoberts & Wimmer, of East St. Louis (Phillip A. Montalvo, of counsel), for appellant.

Robert H. Rice, State's Attorney, of Belleville (Bruce D. Irish and Robert J. Anderson, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

William Smith, the defendant-appellant, pled guilty to the murder of Otha Byrd. He also entered a plea of guilty to the aggravated battery of the deceased which had occurred 6 months before the murder. The pleas were the result of negotiations between the State and the defendant, and the trial court sentenced the defendant to terms of 3 to 9 years for the aggravated battery and 25 to 75 years for the murder.

The defendant raises two issues on appeal: whether the State violated the terms of the plea agreement and whether the trial court imposed an excessive sentence on the plea of guilty to the murder charge. There was no appeal taken from the sentence for the aggravated battery.

Before sentencing the defendant, the court was informed of the facts and circumstances surrounding the crimes for which the defendant was indicted and pled guilty. Some of this information was supplied by the State's attorney when he informed the court of the factual basis for the plea. The record also contains voluminous police reports compiled after an extensive police investigation.

On July 8, 1973, after an argument in a baseball game and a fight, the defendant fired several shots at Otha Byrd. One of the shots struck Byrd in the shoulder, and the bullet remained in his body. The defendant was charged with the offense of aggravated battery. On the morning of January 16, 1974, three dead bodies were found in Ruby's Tavern in East St. Louis, Illinois. Otha Byrd was identified as one of the bodies, and all three of the victims had been shot. An autopsy performed on the body of Otha Byrd revealed that he had been shot three times—once in the top of the head, once in the left side of the chin, and finally in the upper left shoulder. During the autopsy the bullet which had been lodged in the shoulder of Byrd after the shooting of July 8, 1973, was also removed. A laboratory analysis of the bullets removed from the bodies of

the three victims indicated that the bullet which had remained in Otha Byrd's body after the July shooting incident and at least one bullet found at the scene of the January killings were fired from the same gun.

During the police investigation following the discovery of the three bodies, Shirley Jeffery, a close friend of Otha Byrd, was interviewed by Detective White of the East St. Louis Police Department. The following statement contained in the police report was included in the interview with Detective White:

> "Miss Jeffery stated that Byrd told her that Smith had offered him a sum of $1,500.00 if he would decline to prosecute him for the shooting. After Byrd refused the money and told Smith that he was going to go to court and testify, Smith told Byrd that he would kill him before he went to court again to testify against him. Byrd was stated to have been afraid for his safety where Smith was concerned."

In March, 1974, the grand jury indicted the defendant-appellant, William Smith, for murder. On May 14, 1974, the defendant pled guilty to the murder and aggravated battery of Otha Byrd. The pleas were entered as the result of a negotiated agreement, the substance of which the following colloquy discloses:

> "Mr. Montalvo: The negotiations, Your Honor, were to this affect [sic]: That the State would dismiss Counts I and II of the indictment returned in this case, 74-CF-69, that Mr. Smith would enter a plea of guilty to the third Count of this indictment which charges him with the murder of Otha Byrd. That Mr. Smith would also enter a plea on another case which he is under indictment on, which is People of the State of Illinois vs. William L. Smith, and the number of that is 73-CF-11604, where Mr. Smith was charged with the aggravated battery of Otha Byrd back in July of 1973. It was also our understanding that by him doing this, the two charges would be dismissed and the State would make no recommendation as to sentencing, but would leave it up to the discretion of the court following the hearing in mitigation and aggravation. That's my understanding of the negotiations.
>
> Mr. Kuehn: I think I should point out though, so there is no confusion, there have been occasions where we have taken the position that we would not * * * we would remain moot on any sentencing that the court would have, but I want to make it clear that we in this particular case are reserving our right to put on aggravation at the presentence hearing."

The trial court indicated its concurrence with the plea agreement and

accepted the defendant's guilty pleas. The court ordered the probation department to prepare an investigation report, and set a hearing date for sentencing. At the sentencing hearing, five witnesses testified in mitigation on behalf of the defendant, and both the defendant and his counsel made brief statements.

The prosecution presented no evidence in aggravation, but did make the following statement:

"Mr. Kuehn: It was a bloody mess and it stemmed from this man's act and I say to the court that the people of this county are entitled to some protection and only this court can do that.

Now this man, if the type of man they testified to today will be eligible for parole within a certain allotment of time regardless of the extent of his sentence. But if he does not show he can be rehabilitated in the penitentiary, he should not see the light of day and we ask for a maximum sentence by this court."

Defense counsel replied to the State's attorney statement, but did not object to these particular comments which are quoted.

The defendant contends that the State violated the terms of the plea agreement by recommending to the trial court during the sentencing hearing that the defendant receive "a maximum sentence." Defendant believes that this recommendation was contrary to the representation made by the State's attorney to the trial court that the State would not suggest the term of the sentence to be imposed by the court. The defendant also assigns error to several allegedly inflammatory remarks made by the State's attorney at this sentencing hearing.

■■ The State answers that the defendant waived the issue of breach of the plea agreement because he failed to object specifically to the State's attorney's statement that the defendant receive a "maximum sentence." Failure to object in a timely and specific manner constitutes a waiver of the issue on appeal. (*People v. Dickinson,* 13 Ill.App.3d 469, 300 N.E.2d 294; *People v. McAdrian,* 52 Ill.2d 250, 287 N.E.2d 688.) Even though the defendant on two occasions objected to the "inflammatory nature" of the State's attorney's statements, the record shows that no specific objection was made on the ground of breach of the plea agreement. Accordingly, we deem this point waived on appeal. The rest of the State's attorney's statements can be viewed as tantamount to evidence in aggravation, evidence which the State specifically reserved the right to present at the presentence hearing. It would seem logically consistent that if the State could put on evidence in aggravation, it could also comment on the nature and circumstances of the offenses. In *People v. Martin,* 19 Ill.App.3d 631, 312 N.E.2d 24, the court held that where the State had agreed not

to recommend a sentence on a plea of guilty to bribery, aggressive questioning of the defendant at the hearing in aggravation and mitigation did not violate the agreement.

The defendant's second contention is that the court imposed an excessive sentence. The defendant in this case admitted that he both committed an aggravated battery against the deceased, Otha Byrd, and on a later date murdered him. Two other individuals were killed at the same time as Mr. Byrd, and according to the State's attorney there was evidence that at least one of the other two was shot by the defendant. There was also evidence in the record that on the night of the murder the defendant had threatened another individual with a gun. The defendant's counsel, in his argument on defendant's behalf, at the hearing in aggravation and mitigation, admitted that the defendant had "* * * kind of an unfavorable background in terms of violence." The defendant was a mature adult at the time of the murder, and there are no mitigating circumstances surrounding the commission of the murder. It was a vicious unexplainable act of violence.

■■ In reviewing the sentence imposed by the trial court, it is not the function of the appellate court to determine the propriety thereof based on what the appellate court might have done. Rather the appellate court is to determine whether the trial court exercised proper discretion in imposing the sentence. In *People v. Allen,* 56 Ill.2d 536, 547, the court stated, "This court has said many times that the trial court is in a superior position to make the determination as to the sentence and that the authority of the reviewing court to reduce the sentence should be applied with considerable caution and circumspection." (*People v. Sprinkle,* 56 Ill.2d 257; *People v. Hampton,* 44 Ill.2d 41.) In light of the nature and circumstances of this offense, the trial court was justified in imposing the sentence it did. The sentence was within the statutory limits and fit the crime, and we do not think that this court should disturb the sentence imposed by the trial court.

The judgment of the Circuit Court of St. Clair County is affirmed.

Judgment affirmed.

EBERSPACHER and G. MORAN, JJ., concur.