THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MICHAEL J. HENDERSON, Defendant-Appellant.

Fifth District   No. 74-375

Opinion filed February 2, 1977.

Stephen P. Hurley and Michael J. Rosborough, both of the State Appellate Defender's Office, of Mt. Vernon, for appellant.

Robert H. Rice, State's Attorney, of Belleville (Bruce D. Irish and James Condon, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

Defendant, Michael J. Henderson, appeals from a judgment of the circuit court of St. Clair County where he was sentenced to imprisonment for 100 to 200 years in the penitentiary after a jury found him guilty of murder.

Defendant presents two issues for review: (1) whether it was error for the trial court to recall an alternate juror after the final submission of the cause to the jury and to substitute the alternate juror for the regular juror without the defendant's consent; and (2) whether the sentence of 100 to 200 years was excessive in view of defendant's age and lack of a significant prior criminal record.

The facts, briefly stated, show that defendant approached the decedent, Richard Schaeffer, who was sitting in a car, with the intention of committing an armed robbery. The attempted robbery was impulsive and followed defendant's learning that the decedent had money on his person. For no apparent reason, defendant twice fired his weapon causing the death of his victim.

The first jury trial in this cause resulted in a verdict of guilty; however, the trial court granted defendant's motion for a new trial based on errors committed therein. Thereafter a second jury trial was had which resulted in a mistrial when the jury was unable to reach a verdict. Subsequently, there was a third jury trial which resulted in defendant's conviction. At this trial, following the final submission of the cause to the jury, a juror suffered a heart attack 2½ hours after deliberation commenced. Upon establishing the juror's incapacity and inability to continue, the court recalled the two alternates previously sent home. The alternates were then questioned by the trial court, the State and the defense. The alternate ultimately selected for substitution stated that during the short time he had been home, he had only discussed the facts of the case with his wife but that she had expressed no opinion to him. He also stated that: "I have seen the evidence either way, and I haven't made up my mind." Following this proceeding, the alternate was permitted to join in the jury's deliberations. Five hours later, the jury composed of 11 regular jurors and the substituted alternate juror rendered a verdict of guilty.

Defendant on appeal contends that the substitution of the alternate juror following a final submission of the cause to the jury was reversible error. The issue is one of first impression and defendant primarily relies on section 115—4(g) of the Code of Criminal Procedure (Ill. Rev. Stat. 1975, ch. 38, par. 115—4(g)) which states in part:

"If *before the final submission of a cause* a member of the jury dies or is discharged he shall be replaced by an alternate juror in the order of selection." (Emphasis added.)

Citing *People v. Curran,* 286 Ill. 302, 306, 121 N.E. 637, defendant argues that at common law, when a juror was taken ill during the trial, the whole jury was discharged and the remaining eleven plus another were impaneled *de novo.* On the other hand, under the statute cited, alternates may be simply substituted for a dead or discharged juror but only prior to final submission of the cause to the jury. Thus, the defendant concludes that under neither common law nor statutory provision could the trial court have properly taken the action as in the case at bar. Instead, he argues, the court had no option but to order a mistrial.

The State responds by asserting that defendant waived consideration of this issue by his acquiescence in the procedure adopted by the court. Defendant, however, argues that the record does not reflect that he or his counsel in any way agreed to the use of the alternate and that in addition, he was personally not present in court during the proceeding in issue.

■■ The record shows that after the juror, Mr. Pickett, was stricken, the two alternate jurors were recalled and proceedings were had wherein defense counsel Gomric but not apparently defendant himself was present. The alternate jurors were extensively questioned by the court,

the prosecutor Aguirre, and defense counsel. Thereafter the following discussion ensued:

"Mr. Aguirre: The only question in my mind is—we have only one reasonable alternative or two. That would be to proceed on eleven on the argument of necessity, and the other would be to reintroduce one of these alternates in there so that you have a verdict of twelve. I would assume you would take it in the order that they were selected as alternates, and it would be alternate number 1. He has stated on the record that he could enter into the deliberations in this matter.

The Court: What do you think, Mr. Gomric:

Mr. Gomric: Based upon what my client has indicated throughout the trial of this case, and based upon my knowledge of my client, I would indicate to the Court that we could not stipulate to eleven. If Mr. Pickett is deemed unavailable and could not continue, the only alternative would be the choosing of the alternate jurors in the order in which they are serving."

Gomric, however, would not stipulate to the use of the alternate because he believed it required a "court ruling, and that is why we have the alternate." The court therefore ordered the substitution based on its finding that the alternate could render a fair and impartial verdict. Clearly the record shows that the action taken by the trial court was made at the suggestion and with the acquiescence of defendant's attorney. At no time prior to the verdict of the jury did defendant object or move for a mistrial on the basis of the issue now raised. Not until defendant filed a post-trial motion was his objection brought to the attention of the trial court. We find his objection came too late. It is fundamental that generally a defendant may not sit idly by and allow proceedings to occur without objection, and afterwards seek to reverse his conviction by asserting that those same proceedings were irregular. (*People v. Helm,* 40 Ill. 2d 39, 237 N.E.2d 433; *People v. Taylor,* 25 Ill. App. 3d 396, 323 N.E.2d 388.) By defendant's specific acquiescence to the alleged irregularity during the course of the trial, he waived any objection he had thereto. (*People v. Morgan,* 44 Ill. App. 3d 459, 358 N.E.2d 280.) Indeed, defendant invited the alleged error and thus cannot now complain. (*People v. Jennings,* 84 Ill. App. 2d 33, 228 N.E.2d 566.) That defendant was not personally present in the courtroom at the time it was decided to substitute the alternate juror is of no consequence. Defendant cites *People v. Ryan* (1966), 19 N.Y.2d 100, 278, N.Y.S.2d 199, 224 N.E.2d 710, for the proposition that a substitution as under the circumstances here, taken only with the consent of defense counsel but not with the personal express consent of defendant violates defendant's constitutional right to a jury trial. *Ryan,* however, is solely based upon the State Constitution of New

York, which the court found prohibits the substitution of an alternate juror after jury deliberation has begun and only permits an exception thereto upon "a written instrument signed by the defendant in person in open court." (19 N.Y.2d 100, 105, 278 N.Y.S.2d 199, 203, 224 N.E.2d 710, 713.) The Court of Appeals of New York equated a defendant's consent to substitution of an alternate after jury deliberation has begun to a defendant's waiver of a jury trial which was also similarly limited under the State constitution. In Illinois, our supreme court has held broader limits of conduct may be sufficient to waive a trial by jury. In *People v. Murrell*, 60 Ill. 2d 287, 326 N.E.2d 762, the defendants, through their attorneys, waived a jury trial and received bench trials. The court initially distinguished Supreme Court Rule 402 (Ill. Rev. Stat. 1973, ch. 110A, par. 402) requiring an affirmative waiver of the right as only applicable to pleas of guilty. The court then stated that although a defendant's personal waiver of the right to a jury trial is preferred, "it is not constitutionally required; nor do our rules or the statutes require that it be followed." (60 Ill. 2d 287, 291, 326 N.E.2d 762, 765.) Thus the court held:

"[A] defendant ordinarily speaks and acts through his attorney, who stands in the role of agent. A defendant who permits his attorney, in his presence and without objection, to waive his right to a jury trial is deemed to have acquiesced in, and is bound by, his attorney's action." (60 Ill. 2d 287, 290, 326 N.E.2d 762, 764.)

See also *People v. Sailor*, 43 Ill. 2d 256, 253 N.E.2d 397.

Underlying *Murrell* was the court's finding of consent by the defendant to the waiver of his right by his attorney. Thus the fact that the defendant was present while his attorney waived the right is of significance only to the extent that consent may be implied thereby.

In the case at bar, we do not deal with a waiver by counsel of defendant's right to a jury trial, absent a showing of prejudice. (*People v. Rhodes*, 38 Ill. 2d 389, 231 N.E.2d 400; *People v. Ward*, 32 Ill. 2d 253, 204 N.E.2d 741, *cert. denied*, 384 U.S. 1022, 16 L. Ed. 2d 1026, 86 S. Ct. 1947.) As will be discussed hereinafter, the record shows no prejudice to the defendant by the procedure adopted. Absent such a showing, defense counsel's conduct amounted to no more than an acquiescence in a mere irregularity, that is, the requirement allegedly implied by section 115—4(g) of the Code of Criminal Procedure prohibiting substitution after jury deliberations commence. Defendant does not argue on appeal nor did he argue in his post-trial motion that he had not in fact consented to the procedure employed by the trial court. He only argues that he was not physically present at the time his attorney suggested and acquiesced in that procedure. From this alone we are not prepared to hold that defendant had not consented to the irregularity and instead we find defendant bound by his attorney's action.

In appropriate cases, this court will notice plain error affecting substantial rights even though the error had been waived in the trial court. (*People v. Price,* 36 Ill. App. 3d 566, 344 N.E.2d 59; *People v. McMillan,* 130 Ill. App. 2d 633, 264 N.E.2d 554.) We are thus led to consider if it is appropriate for this court to take cognizance of the issue raised despite defendant's waiver thereof. A determination of the appropriateness of review necessarily involves the degree of prejudice, if any, suffered by defendant by the procedure complained of.

Defendant contends that the substitution of the alternate after jury deliberations commenced is "presumptively prejudicial." He bases this conclusion on cases such as *United States v. Virginia Erection Corp.* (4th Cir. 1964), 335 F.2d 868, which he argues would require a reversal *per se* in order to hold inviolate the principle of jury secrecy. In *Virginia Erection,* the trial court faced the possibility that one of the regular jurors might become ill during jury deliberations. With the defendant's consent, the trial court permitted an alternate juror to retire with the jury and to remain with them throughout their deliberations in case a substitution would become necessary. The alternate, however, never did replace the regular juror and ultimately the defendant was found guilty by the original jury. In light of the defendant's consent to the procedure, the court on appeal nonetheless found the irregularity such as to constitute plain error warranting a new trial. The court reasoned that first, Rule 24(c) of the Federal Rules of Criminal Procedure permits an alternate juror to replace a regular only "prior to the time the jury retires to consider its verdict" and further provides that:

> "An alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict."

Thus, unlike section 115—4(g), Rule 24(c) specifically mandates the discharge of an alternate juror when jury deliberations commence. In *Virginia Erection* the court therefore found the procedure adopted by the trial court a violation of the rule and that under the rule, the alternate was legally a "stranger" while he was present in the juryroom. Secondly, as such, the presence of the alternate violated the principles of jury privacy and secrecy to the prejudice of the defendant because of the possibility the alternate may have had some effect on the jury's decision. Thirdly, the trial court had delegated to the alternate and regular juror the strictly judicial function of determining whether and when a substitution might be necessary which the court found to be improper. Lastly, the court noted certain unrelated prejudicial questions asked by the trial court and directed at the regular juror, who it was thought might become ill.

Defendant's reliance on *Virginia Erection* for the proposition of presumptive prejudice in the instant case is unfounded because primarily of its distinguishable facts. In the case at bar, the alternate had in fact

replaced the regular juror. No stranger sat in the juryroom impinging upon its privacy and secrecy because the substitution was whole and complete. In *Virginia Erection* prejudice was found in the possibility that the alternate may have effected the jury's verdict. In the case at bar, that the alternate may have influenced the outcome was not an evil to be prevented, but was the very purpose of the substitution; that is, so a total of 12 people might together reach a verdict.

In any event, the court in *United States v. Allison* (5th Cir. 1973), 481 F.2d 468, *subsequent appeal,* 487 F.2d 339, *cert. denied* (1974), 416 U.S. 982, 40 L. Ed. 2d 759, 94 S. Ct. 2383, rejected the defendant's contention that under *Virginia Erection* prejudice is presumed. In *Allison,* an alternate was permitted, with the defendant's consent, to retire with the jury and remained with them during the first one-quarter of their deliberations. Despite the direct violation of the mandatory requirements of Rule 24(c), the court on appeal would not presume prejudice but instead remanded for a hearing to determine prejudice to the defendant. On remand no prejudice was found by the trial court and its decision was affirmed on subsequent appeal. See also *United States v. Hayutin* (2d Cir. 1968), 398 F.2d 944, *cert. denied,* 393 U.S. 961, 21 L. Ed. 2d 374, 89 S. Ct. 400, *subsequent appeal sub nom. United States v. Nash,* 414 F.2d 234, *cert. denied* (1969), 396 U.S. 940, 24 L. Ed. 2d 242, 90 S. Ct. 375.

In *United States v. Lamb* (9th Cir. 1975), 529 F.2d 1153, also cited by defendant, after the jury had deliberated for a total of four hours the jury returned a verdict of guilty. The verdict was refused by the trial court because it was inconsistent with instructions. A regular juror was then excused for personal reasons and the trial court proposed substituting an alternate juror in his place. The defendant objected and promptly made a motion for a mistrial which was denied. Over the defendant's objection the alternate joined the remaining jurors and after 29 minutes of deliberation the newly constituted jury found the defendant guilty. On appeal the court reversed the conviction relying on the mandatory requirements of Rule 24(c) that an alternate must be discharged after the jury retires to consider its verdict. After citing *Allison* and *Hayutin,* the court found that the defendant had been prejudiced by the "inherent coercive effect upon an alternate juror who joins a jury that has, as in this case, already agreed that the accused is guilty* * *." The court also noted that the record did not show whether, during her temporary release, the alternate juror had discussed the case or had been influenced in any way by others.

Thus in *Lamb* prejudice was not presumed but was found in the record. Moreover, unlike the case at bar, in *Lamb* the defendant vigorously objected to the procedure adopted by the court. In contradistinction, in *Leser v. United States* (9th Cir. 1966), 358 F.2d 313, *cert. dismissed,* 385

U.S. 802, 17 L. Ed. 2d 49, 87 S. Ct. 10, the court affirmed the defendant's convictions even though after deliberations had commenced, an alternate was substituted for an ill regular juror. The court held the defendants bound to their counsel's stipulation to the procedure adopted and further noted that the defendants themselves failed to raise any objection after they were informed of the proposed procedure. The court also distinguished *Virginia Erection* on the fact that in *Leser* there had never been more than 12 jurors present during jury deliberations. Of significance, the court in *Leser* expressly found that the defendants failed to show any prejudice.

Consequently, we do not find support for defendant's argument that we must presume prejudice in this case. In *People v. Ward*, 32 Ill. 2d 253, 204 N.E.2d 741, *cert. denied*, 384 U.S. 1022, 16 L. Ed. 2d 1026, 86 S. Ct. 1947, the defendant for the first time on appeal raised the issue that a juror held a "courtesy" commission as a special deputy sheriff; a fact unknown at trial. The court after finding no prejudice to the defendant shown in the record characterized the jurors presence on the jury as a mere irregularity and held:

> "[A] mere irregularity in the selection of a jury does not call for a reversal unless it is also shown that the defendant was in some manner prejudiced thereby." (32 Ill. 2d 253, 259-60, 204 N.E. 2d 741, 745.)

In *People v. Rhodes*, 38 Ill. 2d 389, 231 N.E.2d 400, the defendant argued that the trial court erred in failing to discharge an alternate juror before the jury retired to consider its verdict. At a post-conviction hearing the alternate testified that she only entered the jury room to obtain her coat. The court held that the facts could only at most be characterized as an irregularity, which was insufficient to require reversal since no prejudice was shown to the defendant.

■■ In the case at bar, the gist of defendant's contention is that since the procedure adopted is neither authorized by statute nor known at common law it was error for the trial court to have so adopted it. We are of the opinion that absent a showing of prejudice, the error alleged was at most an irregularity committed at the suggestion and with the acquiescence of defendant and thus insufficient to constitute plain error. A review of the record shows no support for defendant's argument of prejudice and in fact affirmatively negates any claim of prejudice.

As we have mentioned, the record shows that the alternate was extensively examined to re-establish his impartiality before the trial court permitted the substitution. The alternate stated that he had not talked to outsiders except his wife, about the case. He said that he had expressed no opinion to his wife because "I hadn't made up my mind." Nor had she expressed any opinions to him. Although he had mentioned to her some

individual points about the case, he had "just got in the door" before being called to return to the court. More than once the alternate stated positively that he was open minded and able to consider the evidence fairly. Although at the end of the proceeding the defense attorney stated that he would like to have the court inquire further about the juror's discussion with his wife, the attorney did not press the matter because the juror had stated that he was open minded.

Before the regular juror had been taken ill, the jury had deliberated for a total of 2½ hours. After the alternate juror had been substituted, the reconstituted jury deliberated for a total of five hours before reaching a verdict.

We find no evidence reflected in the record of any impermissible contact between the alternate juror and any outsider which prejudiced defendant. (*People v. Williams,* 38 Ill. 2d 115, 230 N.E.2d 224; *People v. Dilworth,* 67 Ill. App. 2d 384, 214 N.E.2d 9.) Any possibility that the alternate may have been influenced by his brief discussion with his wife is directly contradicted by the alternate's own testimony. Nor do we find any evidence showing the possibility of coercion of the alternate by a jury which had previously come to a decision as in *United States v. Lamb* (9th Cir. 1975), 529 F.2d 1153. To so hold in the instant case would require a presumption of jury misconduct which cannot be properly made. We will not permit defendant through his attorney, to acquiesce in a procedure by which his case goes to a jury, and allow the jury without objection to reach a verdict, and thus gamble on acquital, and only when found guilty voice his objection.

■■ Defendant does not dispute the sufficiency of the evidence supporting the jury's verdict and our review of the record shows that he received a fair trial. Consequently, we affirm defendant's conviction.

Defendant next contends that his sentence is excessive. The standard of review where the sentence imposed is within statutory limits is whether the trial court abused its discretion. (*People v. Taylor,* 33 Ill. 2d 417, 211 N.E.2d 673.) To modify the sentence it must appear to the reviewing court that the sentence imposed is a clear departure from the spirit and purpose of fundamental law and the requirement of our constitution that the sentence be proportioned to the nature of the offense and measure of the possibilities for rehabilitation. *People v. Grau,* 29 Ill. App. 3d 327, 330 N.E.2d 530; *People v. Smith,*(28 Ill. App. 3d 908, 329 N.E.2d 896.)

■■ Defendant was convicted of the senseless murder of a 17-year-old boy for which he was sentenced to 100 to 200 years imprisonment. (See *People v. Cannon,* 25 Ill. App. 3d 737, 323 N.E.2d 846.) Defendant contends that the trial court abused its discretion by not giving adequate weight to his rehabilitative potential. At the sentencing hearing no witnesses were presented by either the State or defendant. The trial court

relying on the presentence report apparently was of the opinion that defendant had no potential for rehabilitation. The report shows that defendant was 21 years old at the time of the crime. He was married and the father of five children and he was employed as a welder. As a juvenile he had been convicted of assault and while on parole therefor, he committed the offense of auto larceny. As an adult he had been fined $5 for criminal damage to property and had been convicted of a traffic offense. While, as the State asserts, defendant expressed no remorse for his crime, we believe that nonetheless the record does not support a conclusion that defendant completely lacks rehabilitative potential. We also note that despite any minimum sentence of 20 years or more which may be imposed, defendant under the provisions of section 3—3—3 of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1003—3—3) would be eligible for parole after serving 20 years less time credited for good behavior, if any. Consequently, the 100-year minimum is of no legal consequence, and since the nature of the offense and character of the defendant justify at least a 20-year minimum, we affirm the sentence imposed.

Accordingly, we affirm the judgment of the circuit court of St. Clair County.

Affirmed.

JONES, J., concurs.

Mr. JUSTICE GEORGE J. MORAN, dissenting:

The majority has offered several reasons for skirting the merits of defendant's arguments, including waiver by defense counsel and a failure to show prejudice. However, in my opinion, we cannot and should not allow such reasons as these to preclude our consideration of such a fundamental right as trial before an impartial jury. Accordingly, even if this point was waived through the lack of a specific objection, I deem this an appropriate case in which to exercise discretionary review under Supreme Court Rule 615(a) (Ill. Rev. Stat. 1975, ch. 110A, par. 615(a)).

In my opinion, prejudice through the substitution of jurors in this case was manifest in light of the mandatory language of section 115—4(g), which reads in relevant part:

"*If before the final submission of a cause* a member of the jury dies or is discharged he shall be replaced by an alternate juror in the order of selection." (Ill. Rev. Stat. 1973, ch. 38, par. 115—4(g).) (Emphasis added.)

While the above language is silent concerning the use of alternate jurors

after the commencement of deliberation, it impliedly indicates that such use is contrary to, and not authorized by, the statute.

The majority discounts the significance of *United States v. Lamb* (9th Cir. 1975), 529 F.2d 1153, which construed Federal Rule of Criminal Procedure 24(c), a provision nearly identical to section 115—4(g). That rule reads in pertinent part:

> "Alternate jurors in the order in which they are called shall replace jurors who prior to the time the jury retires to consider its verdict or become or are found to be unable or disqualified * * *."

In holding that the language of this statute is mandatory, the court in *Lamb* was of the opinion that the prejudice resulting from the inherent coercive effect upon an alternate juror who joined a jury that had commenced deliberations is substantial. Further, to allow substitution under such circumstances would, according to *Lamb,* create the opportunity for a juror who could not or would not vote a guilty verdict for reasons of conscience, to secure an alternate to replace him. I consider *Lamb* a persuasive precedent.

The crime of murder is indeed heinous, an offense for which the culpable should without a doubt be punished. But every person is entitled to a fair trial and to have his case determined by a jury free from the interference of an unauthorized person, no matter how conclusive the evidence against him. (*People v. Kawoleski,* 313 Ill. 257, 14 N.E.2d 203.) The use of an alternate juror in this case was improper. The mandatory phraseology of section 115—4(g) of the Code of Criminal Procedure (Ill. Rev. Stat. 1973, ch. 38, par. 115—4(g)) precludes the use of alternate jurors after deliberations have been initiated. It is my opinion that in unusual situations such as these where a serious doubt is raised as to the partiality of a juror, a defendant's right to a fair trial should never give way to the interests of judicial economy. I would reverse the judgment and remand for a new trial.